1
2
3
4          UNITED STATES DISTRICT COURT
5             DISTRICT OF NEVADA
6                   * * *
7   UNITED STATES OF AMERICA,              Case No. 2:16-CR-155 JCM (CWH)
8                        Plaintiff(s),              ORDER
9          v.
10  JOEL KENNETH AUSBIE,
11                       Defendant(s).

12

13        Presently before the court is petitioner Joel Ausbie's ("Ausbie") motion to vacate, set aside,

14  or correct his sentence pursuant to 28 U.S.C. § 2255.  (ECF No. 253).    The United States of

15  America ("the government") filed a response (ECF No. 269), to which Ausbie replied (ECF No.

16  274).

17        Also before the court is the government's motion to seal an exhibit (ECF No. 271) to its

18  response.  (ECF No. 270).  Ausbie did not respond, and the time to do so has passed.[1]

19  **I.      Background**

20        On November 6, 2015, the government filed a criminal complaint charging Ausbie—and

21  co-defendant Calvin Robinson ("Robinson")—with one count of conspiracy to commit arson in

22  violation of 18 U.S.C. §§ 844(i), (n).  (ECF No. 1).

23        On January 26, 2016, the government filed a criminal complaint charging Joseph

24  Strickland ("Strickland") with conspiracy to use of a facility of interstate commerce to promote

25  extortion, which was filed in this matter because it related to Ausbie's alleged criminal conduct.[2]

26  _____

27        [1] With good cause appearing, the court GRANTS the government's motion.

28        [2] The case against Strickland is denoted as both case number 2:16-mj-00083-CWH and
    case number 2:16-cr-00155-JCM-CWH-3.  The ECF docketing numbers for Strickland are

James C. Mahan
U.S. District Judge

On May 13, 2016, the court approved Ausbie's motion to substitute attorney Stephen Stein in place and instead of his previous counsel, Stuart Goldfarb.  (ECF No. 31).  Stein represented Ausbie through trial and is "counsel" for purposes of this order.  (*See* ECF No. 253).

On August 3, 2016, the government filed a superseding indictment as to Ausbie, charging him—and co-defendant Robinson—with an additional charge (count 2) of conspiracy to commit extortion by force of threat of injury in violation of 18 U.S.C. § 1951.  (ECF No. 60).

After several continuations, the court set Ausbie's trial for July 10, 2017.  (ECF No. 106).  Ausbie's three-day jury trial commenced on that date.  (ECF Nos. 112, 113, 115).

On the first day of trial, the parties conducted *voir dire* for fifty-four jurors over two hours.  (ECF No. 112).  After the parties made opening statements, the government called seven witnesses, four of whom counsel cross examined.  (*Id.*).

On the second day of trial, the government called ten witnesses, including Joseph Strickland and FBI special agent Ryan Burke.  (ECF No. 113).  Stein cross examined six witnesses, including Strickland and Burke.  (*Id.*).

On the third day of trial, the government rested its case and Ausbie then rested his case without calling any witnesses.  (ECF No. 115).  After jury instructions and closing arguments, the jury returned a verdict of guilty on both counts.  (ECF No. 116).

On February 8, 2018, the court sentenced Ausbie to 151 months incarceration per count, to run concurrently, and 36 months supervised release per count, to run concurrently.  (ECF No. 160).  Ausbie then appealed his judgment (ECF No. 161), which the Ninth Circuit affirmed on August 5, 2019.  (ECF No. 228).  On September 27, 2019, after Ausbie's petition for rehearing was denied, this court entered the order on mandate affirming Ausbie's judgment.  (ECF No. 235).

Ausbie now seeks an evidentiary hearing and a new trial under 28 U.S.C. § 2255.  (ECF No. 253).

## II.    Legal Standard

Federal prisoners "may move . . . to vacate, set aside or correct [their] sentence" if the court imposed the sentence "in violation of the Constitution or laws of the United States . . . ."  28 U.S.C.

---

independent of those for Ausbie and Robinson.  So, to avoid confusion, this order will not cite to Strickland's filings.

§ 2255(a).  § 2255 relief should be granted only where "a fundamental defect" caused "a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 345 (1974); *see also Hill v. United States*, 368 U.S. 424, 428 (1962).

Limitations on § 2255 motions are based on the fact that the movant "already has had a fair opportunity to present his federal claims to a federal forum," whether or not he took advantage of the opportunity.  *United States v. Frady*, 456 U.S. 152, 164 (1982).  § 2255 "is not designed to provide criminal defendants multiple opportunities to challenge their sentence."  *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

"When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition."  *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000).  Further, "[i]f a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so," the defendant is in procedural default.  *Johnson*, 988 F.2d at 945; *see also Bousley v. United States*, 523 U.S. 614, 622 (1998).

However, ineffective assistance of counsel claims are an exception to procedural default.  *Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *see also United States v. Schlesinger*, 49 F.3d 483, 509 (9th Cir. 1994) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.").

**III.    Discussion**

Ausbie asserts one ground for which he requests that the court grant his motion to vacate, set aside, or correct his sentence pursuant to § 2255: ineffective assistance of counsel.  Thus, the court determines first whether Ausbie's counsel was ineffective, then whether to hold an evidentiary hearing, and finally whether to grant Ausbie any certificates of appealability.

*a.  Ineffective assistance of counsel*

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).  To prevail on a claim of ineffective assistance of counsel, "(1) the [petitioner] 'must show

that counsel's representation fell below an objective standard of reasonableness;' and (2) the [petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

Ausbie asserts seven arguments to support his claim of ineffective assistance, (1) counsel fell asleep during trial; (2) counsel improperly struck two African American jurors with peremptory challenges; (3) counsel failed to object to improper character evidence; (4) counsel conceded elements of two charges and Ausbie's guilt; (5) counsel failed to object to hearsay testimony of Joseph Strickland; (6) counsel failed to conduct proper investigation and failed to consult with experts; and (7) the cumulative errors of counsel prejudiced Ausbie.  (*See generally* ECF No. 253).

The court addresses each argument in turn.

### 1.  Counsel's falling asleep during trial

Ausbie's first argument is that counsel slept through substantial portions of the trial including jury selection, the government's case in chief, and closing arguments.  (ECF No. 253 at 18).[3]  Ausbie argues that counsel's sleeping, or appearing to sleep during trial, is objectively unreasonable and inherently prejudicial.  *See Javor v. U.S.*, 724 F.2d 831, 833–34 (9th Cir. 1984).  While Ausbie is correct in stating that sleeping through substantial portions of trial, his reliance on *Javor* is misplaced.

In *Javor*, the Ninth Circuit reviewed a district court judge's holding that the petitioner was not tried in violation of his Sixth Amendment rights when his counsel slept during certain parts of

---

[3] To support this claim, Ausbie provides four declarations from his sister, two nieces, and a friend.  (ECF Nos. 253-1; 253-2; 253-3; 253-4).

Relevant to Ausbie's claim is the declaration that "during jury selection . . . I noticed [counsel] sleeping . . . . After opening statements, I saw [counsel] fall asleep . . . . During closing arguments, I also observed [counsel] sleeping off and on at least four times." (ECF No. 253-2).

Also relevant—though suspiciously identical in language—are the three declarations that "on several occasions during the trial, I watched [counsel] have to be nudged by [Ausbie] to wake him up from sleeping while the prosecution presented their witnesses."  (ECF Nos. 253-1; 253-3; 253-4).

1    the trial.  *Id.* at 831.  There, the Ninth Circuit found that the judge presiding over the multi-

2    defendant trial[4] saw that petitioner's counsel "was often 'dozing' and that other attorneys 'nudged'

3    and 'kicked' him to wake him up."  *Id.* at 834.  In reversing the district court's holding, the Ninth

4    Circuit held that counsel's sleeping during a substantial portion of the trial is inherently prejudicial.

5    *Id.* at 835.

6            Here, *Javor* is inapplicable because the record does not support a finding that counsel was

7    sleeping during any substantial portion of trial.  During voir dire, counsel made inquiries about

8    dismissed jurors, participated in a side bar conference, and promptly responded to the court's

9    inquiries.  (*See, e.g.*, ECF No. 166 at 10, 13, 14, 64, 65, 67).  During the parties' cases-in-chief,

10   counsel responded to each of the court's inquiries, made several objections, called sidebars, and

11   spoke up to the court if he did not hear something clearly.  (*See, e.g.*, ECF Nos. 167 at 2, 20–21,

12   24, 63, 76, 98; 168 at 2, 60–61, 100, 114, 120, 171–72, 216–31; 169 at 2, 45, 68–74, 114).  During

13   closing arguments, counsel incorporated parts of the government's argument and the testimony of

14   several witnesses from the trial.  (*See* ECF No. 169 at 116–24).

15           Further, unlike in *Javor*, this judge presided over the trial and did not witness counsel

16   sleeping.  Thus, notwithstanding Ausbie's declarations, the court's recollection and the record both

17   show that counsel was not sleeping during substantial portions of the trial.  Consequently, Ausbie

18   fails to show deficient performance and prejudice.

19           Accordingly, Ausbie fails to show ineffective assistance of counsel on the basis of

20   counsel's sleeping during trial.

21           *2.  Counsel's improper striking of two African American panelists*

22           Ausbie next argues that counsel was ineffective because he struck two African American

23   potential jurors on the basis of race.  (ECF No. 253 at 27).  Ausbie's argument is entirely

24   speculative and is without merit.

25           Before making preemptory challenges, counsel informed the court that he saw a potential

26   problem in that there were very few African American panelists and he intended to strike those

27   _____

28           [4] Who had disqualified himself from further proceedings at the appellant-defendant's
     request.  *Id.* at 832.

panelists that happened to be African American.  (ECF No. 166 at 64).  After preemptory challenges, the government raised the issue that all African American panelists were stricken.  (*Id.* at 75).  Counsel then informed the court he did not strike the panelists due to race, but strategy; specifically, "sympathy towards the victims."  (*Id.* at 75–76).

That counsel believed those two panelists would be sympathetic to the victims does not mean that he believed any African American panelist would have been.  To the contrary, counsel lamented that challenging the panelists would result in no African American jurors remaining on the jury.  Thus, while the court did not conduct a full *Batson* hearing, the record is clear; counsel's decision to strike the potential jurors was not based on race, but on trial strategy.[5]

Accordingly, Ausbie fails to show deficiency and prejudice, and thus fails to show ineffective assistance of counsel on the basis of counsel's striking of the two panelists.

### 3.  Counsel's failure to object to improper character evidence

Ausbie next argues that his counsel erred in failing to object to improper character evidence in the form of testimony and an exhibit.  According to Ausbie, this evidence was "clearly prejudicial" because it suggested Ausbie's participation in and propensity to commit other crimes.  (ECF No. 253 at 31–32).

The testimony at issue is the government's line of questioning with Joseph Strickland where Strickland referred to text messages between him and Ausbie.  (*See* ECF No. 168 at 153–54).  Strickland testified that the text messages referred to "a job in San Bernardino [Ausbie] wanted [Strickland] to do."  (*Id.* at 153).  Strickland also testified that he had contact with Ausbie after the fire at issue in the trial, "[t]o talk about the job down in San Bernardino."  (*Id.*).  Finally, Strickland testified that he did not complete that job because he lost contact with Ausbie and "if [Ausbie] wasn't there to tell me, I was not going to do it."  (*Id.* at 154).

While Ausbie is correct that evidence of other bad acts is not admissible to show that a defendant had a propensity to commit criminal acts, such evidence may be used to show intent, identity, plan, motivation, and preparation.  *See* Fed. R. Evid. 403.  Here, the government did not

---

[5] Ausbie may now argue that he "did not consent" to the striking of those two panelists, but such strategic decisions are left to counsel.

attempt to use Strickland's texts for propensity but to show intent—to commit the arson at issue—and identity—that Ausbie was the individual involved in the conspiracy at issue.[6]  (*See* ECF No. 168 at 150).

Thus, as to Strickland's testimony, there is no deficient performance for counsel's failure to object to what was admissible evidence.

The exhibit at issue is exhibit 21b, a group of text messages between Strickland and various individuals where the phrase "on crip" appears three times on pages 3, 7, and 17.  (*See* ECF No. 253 at 38).  Ausbie argues that "on crip" refers to gang activity and inherently prejudiced him because the jury could infer that he was in a gang or acting in furtherance of a gang.  The court disagrees.

At no point during direct examination, cross examination, or re-direct did the government or Ausbie's counsel question Strickland about any text on any of the three pages where the phrase "on crip" appears.  (*See* ECF No. 168 at 151–56).  On direct, the government confirmed that the texts on pages 2, 14, 21, and 40—all with a "702" area code phone number—were between Strickland and Ausbie.  (*Id.* at 151–54).  On cross examination, Ausbie's counsel made certain that the jury understood the text messages contained within exhibit 21b were between Strickland and multiple individuals, not just Ausbie.  (*Id.* at 156–57).

While it was not specifically discussed during trial, the only texts containing "on crip" were between Strickland and a "626" number.  When Strickland finished testifying, the very next witness called was FBI special agent Ryan Burke, who confirmed that the "626" phone number was associated not with Ausbie, but with co-defendant Robinson.  (*Id.* at 190, 198).

As the government did not imply that Ausbie was involved in a gang, and the alleged references to gang activity did not occur between Ausbie and any individual, there was no risk that the jury improperly associated Ausbie with gang activity.  Thus, as to exhibit 21b, there was no inherent prejudice and counsel was not deficient for declining to object to its admission.

---

[6] The court specifically addressed this issue when the parties made objections to jury instructions.  (ECF No. 168 at 218–22).

James C. Mahan
U.S. District Judge

- 7 -

Therefore, Ausbie fails to show ineffective assistance of counsel on the basis of failing to object to Strickland's testimony and texts.

### 4. Counsel's conceding elements of two charges and Ausbie's guilt

Ausbie next argues that, by stating that Ausbie was helping co-defendant Robinson and that Ausbie felt responsible to "get that money back for his friend," counsel conceded that there was an agreement and that Ausbie acted to help accomplish it. (ECF No. 253 at 41). In addition to ineffective assistance, Ausbie argues that counsel committed structural error by violating his autonomy—his right to make decisions so central to his case that they are not considered tactical decisions normally left to the attorney—because he did not authorize counsel to concede that there was a conspiracy. (*Id.* at 42–43). Nevertheless, Ausbie fails to show either ineffective assistance or structural error.

During opening statements, Ausbie's counsel stated: "I will attempt to get out, by cross-examination, that Mr. Ausbie was helping Mr. Robinson obtain his money back because his lady friend stole it from Mr. Robinson." (ECF No. 167 at 22). During closing arguments, counsel stated:

> "Is that [getting money back] not a possibility that a friend would do for a friend? 'I want that money back. I got to make Calvin Robinson whole. I don't like the fact that my woman stole that money from my friend. I want something back. I want that money back. But come back anyway. We can put this behind us. And how is my son?'"

(ECF No. 169 at 120–21). Later on, counsel argued that one who has no knowledge of a conspiracy but happens to act in a way which furthers some object of a conspiracy does not become a conspirator. (*Id.* at 124–25).

In this context, counsel certainly did not concede that there was a conspiracy or that Ausbie was a part of any conspiracy. As the government argues, merely helping a friend retrieve property stolen by a spouse is lawful activity. So, arguing that Ausbie independently intended to retrieve the money is akin to arguing that there was no conspiracy for Ausbie to participate in. This argument is not so feeble as to be considered deficient, and Ausbie fails to show that he was prejudiced from it.

James C. Mahan
U.S. District Judge

- 8 -

Therefore, Ausbie fails to show ineffective assistance of counsel on the basis of conceding elements of the charges and Ausbie's guilt.

### 5. *Counsel's failure to object to hearsay testimony of Joseph Strickland*

Ausbie next argues that counsel was ineffective because he failed to object to testimony from Joseph Strickland on the bases that the statements were hearsay and substantially more prejudicial than probative. (ECF No. 253 at 44). Ausbie argues that this deficient performance prejudiced him because the government used those statements in its closing arguments to help establish that Ausbie was the "puppet master" for the conspiracy. (*Id.*).

The evidence at issue is Strickland's testimony that someone named HB made statements to him, including: 1) that HB was working for "big brother," who Strickland believed to be Ausbie; 2) that the people who lived in targeted house "owed us some money for some drugs;" 3) that "everybody went to jail;" and 4) that "it was in everybody's best interest if [Strickland] got rid of [Strickland's motorcycle]." (ECF No. 168 at 124, 127, 128, 148, 150).

Ausbie incorrectly argues that these statements were inadmissible hearsay. None of these statements were used to prove the truth of the matter asserted—that "everybody" involved in the offense went to jail, that someone actually owed someone money for drugs, or that destroying the motorcycle was in "everyone's" best interest. Rather, the statements were used to probe into Strickland's belief of what was going on behind the scenes of the conspiracy—that Ausbie was intimately involved in or even in control of the conspiracy. Further, these statements are not so overly prejudicial to sustain a Rule 403 objection, and counsel cannot be considered deficient for declining to object to their admission.

Therefore, Ausbie fails to show deficiency and prejudice, and thus fails to show ineffective assistance of counsel on the basis of failing to object to Strickland's testimony.

### 6. *Counsel's failure to conduct proper investigation and consult with experts*

Though Ausbie concedes that consulting with an expert is not required in every case, he argues that counsel was deficient because he "took no action to independently test or examine the forensic evidence in this case, which included DNA/fingerprint analysis of the notes found at the scene of the two incidents, as well as the vice [sic] grips." (ECF No. 253 at 48–49). According to

Ausbie, "[t]his evidence would have helped to establish that there was no scientific or forensic evidence tying Mr. Ausbie to the scene of the two incidents." (*Id.*).

Here, the government did not present forensic or scientific evidence to show that the note was written by or belonged to Ausbie. Instead, the government argued that it would be inconsistent for Ausbie to claim the note belonged to someone else when it read "give me my money." However, the government did not attempt to prove that it was Ausbie's note with any forensic evidence as Ausbie claims.

Noting the government's deficiency, counsel argued to the jury that there was a lack of forensic evidence. (*See* ECF No. 169 at 117 ("Where was the fingerprint analysis? Where was the DNA analysis? Where was the handwriting exemplars?")). Additionally, counsel posed that the note could have been written by someone else. (*Id.*). This shows that counsel strategically argued the lack of evidence on the government's behalf rather than attempting to produce expert evidence to make that argument for him.

As the government failed to produce any expert evidence of its own for counsel to rebut, Ausbie's counsel was not deficient for arguing that the government failed to meet its burden.[7] Accordingly, Ausbie fails to show ineffective assistance of counsel on the basis of failure to properly investigate.

   *7. Counsel's cumulative errors*

Ausbie's cumulative errors argument relies in part on a finding that counsel slept through substantial portions of the trial. However, as previously stated, Ausbie fails to show that counsel did. Even taking counsel's alleged errors cumulatively, counsel's performance was effective under the broad standards afforded by the Sixth Amendment.

Therefore, Ausbie fails to show ineffective assistance of counsel.

. . .

. . .

---

[7] Even if Ausbie showed deficient performance, Ausbie's speculative arguments about what his counsel "should" have done are insufficient to show prejudice. *See, e.g.*, *McMullen*, 98 F.3d at 1158; *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) ("[C]onclusory suggestions that . . . counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation.").

1    *b. Evidentiary hearing*

2         Ausbie argues that he is entitled to an evidentiary hearing on his petition so he can question

3    counsel as well as other witnesses relevant to the claims asserted herein.  (ECF No. 253 at 55).

4    The court disagrees.

5         A petitioner is entitled to an evidentiary hearing where the petitioner raises a colorable

6    claim of ineffective assistance of counsel.  *See Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir.

7    1990).  Here, Ausbie fails to raise a colorable claim because each of his arguments fail to establish

8    deficient performance, let alone prejudice.  Even Ausbie's argument supported by declarations—

9    that counsel was sleeping during trial—is not colorable because Ausbie's recollection of events is

10   directly controverted by the record and the court's recollection of the trial.[8]

11        Therefore, the court denies Ausbie's request for an evidentiary hearing.

12   *c. Certificate of appealability*

13        When the court denies a petitioner's § 2255 motion, the court may issue a certificate of

14   appealability only when a petitioner makes a substantial showing of the denial of a constitutional

15   right.  28 U.S.C. § 2253(c)(2).  To make such a showing, the petitioner must establish that

16   "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have

17   been resolved in a different manner or that the issues presented were 'adequate to deserve

18   encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation

19   omitted).

20        Here, Ausbie fails to make a substantial showing that his Sixth Amendment right to counsel

21   was denied.  Each of his arguments fail to the point that no reasonable jurists could debate that his

22   petition should have been resolved in a different manner.  Ausbie's attempt to relitigate his

23   conviction and sentence by categorizing every action and inaction by his counsel as ineffective

24   does not "deserve encouragement to proceed further." *Id.*

25        Therefore, the court denies Ausbie a certificate of appealability.

26   . . .

27   _____

28        [8] The court need not conduct a hearing to expand upon the record when this judge was present for the subject proceedings.

**James C. Mahan**
**U.S. District Judge**

1    **IV.    Conclusion**

2        Accordingly,

3        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that petitioner Joel Ausbie's

4    motion to vacate, set aside, or correct sentence pursuant to § 2255 (ECF No. 253) be, and the same

5    hereby is, DENIED.

6        IT IS FURTHER ORDERED no certificate of appealability shall be issued.

7        IT IS FURHTER ORDERED that the government's motion to seal (ECF No. 270) be, and

8    the same hereby is, GRANTED.

9        DATED February 16, 2022.

10

11       UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge